1
2
3
4
5
6
7
8               IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC GARFIELD WILLIAMS,

11              Plaintiff,                    No. CIV S-07-0100 LKK EFB PS

12        vs.

13   SEAN KENNEY, KENT                        ORDER AND FINDINGS AND
     TRIBBLE, CPL. BOTELLO,                   RECOMMENDATIONS
14
                Defendants.
15   _____/

16        This action, in which plaintiff is proceeding *in propria persona*, was referred to the

17   undersigned pursuant to Local Rule 72-302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Plaintiff alleges

18   violations of his constitutional rights in connection with his arrest by Vallejo police officers on

19   July 15, 2006.  Defendants Kenney, Tribble, and Botello have moved for summary judgment on

20   the basis of qualified immunity, which plaintiff opposes.  The matter was taken under

21   submission pursuant to Local Rule 78-230(h).  Having considered all submitted papers, the court

22   recommends that defendants' motion be denied.

23        The court has also considered the briefing filed by defendants following submission of

24   their summary judgment motion regarding the effect of the City of Vallejo's bankruptcy petition,

25   filed on May 23, 2008.  For the reasons discussed below, the court also recommends that this

26   action be stayed pursuant to 11 U.S.C. § 362(a).

1

## I. BACKGROUND

This action is proceeding on the second amended complaint filed by plaintiff on March 27, 2007.  Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 against three individual officers of the Vallejo City Police Department – defendants Sean Kenney, Kent Tribble, and Richard Botello.[1]  Plaintiff alleges that all three officers violated his constitutional rights under the Fourth and Fourteenth Amendments by employing excessive force in connection with his arrest on July 15, 2006.

Plaintiff alleges that on the morning of July 15, 2006, around 4:00 a.m., defendant Kenney followed plaintiff for approximately five miles on "Eastbound Highway 80, mimicking each lane change until the plaintiff slowed and pulled his vehicle to the left shoulder" so Kenney could pass him.  SAC, ¶ 6.  Instead of passing plaintiff, Kenney "turned on his overhead lights," and effected a traffic stop.  *Id.*  Plaintiff alleges he sat in his vehicle "for a period of time, got out and walked toward" Kenney's patrol car.  SAC, ¶ 7.  Plaintiff alleges that Kenney stuck his head out of the car window, and told plaintiff to get back in his vehicle.  *Id.*  Plaintiff alleges he put his driver's license on the hood of Kenney's car, and turned to go back to his vehicle, whereupon Kenney exited the patrol car and told plaintiff that he was under arrest.  *Id.*  Plaintiff alleges he was handcuffed and told to get against the car, and that Kenney grabbed plaintiff's third finger on his right hand and dislocated it.  *Id.*

Plaintiff alleges he told Kenney, "You can arrest me all day long, but you cannot torture me."  *Id.*  Plaintiff alleges he started to comply when Kenney told him to get on the ground, but that Kenny kicked him, knocked him to the ground, jumped on him and began hitting him.  *Id.*  Plaintiff alleges Kenney was soon joined by other Vallejo police officers who beat him and caused him to lose consciousness and control of his bowels.  *Id.*  Plaintiff alleges he was then transported, in custody, to Kaiser Permanent Hospital, where he was "paraded" around while

---

[1] Defendants City of Vallejo and the Vallejo Police Department were dismissed on July 6, 2007.

shackled to a gurney.  SAC, ¶ 9.  Plaintiff alleges that he underwent a blood draw, during which

defendant Corporal Botello placed his hands around his neck, constricting his blood and oxygen

flow.  *Id*.

Plaintiff alleges numerous physical and emotional injuries as a result of these incidents,

and seeks twenty-five million dollars and special damages for payment of all past and future

medical expenses.  He also seeks twenty-five acres on the Western end of Mare Island, three

purebred horses, and other exemplary damages.  SAC, ¶¶ 11, 12:13-31.

In their summary judgment motion, defendants assert that they are entitled to qualified

immunity with regard to plaintiff's claims because, (1) no constitutional violations occurred, and

(2) even if they had, the law was not clearly established so as to put them on notice that their

actions violated plaintiff's rights.

On November 1, 2007, plaintiff filed a document entitled, "Motion to Quash Defendant

Motion for Summary Judgment," which the court construes as an opposition to the summary

judgment motion.  Although it is untimely, the court, has considered the opposition and the

declarations submitted by plaintiff.  However, the court again admonishes plaintiff that

continued failure to comply with the Local Rules and scheduling orders will result in sanctions,

including the sanction of dismissal.  The court has previously admonished plaintiff regarding his

failure to follow applicable rules, and cautioned him that further failures could result in

sanctions, including a recommendation of dismissal.  *See* Docket Entry no. 40 (order addressing

plaintiff's prolix filings and denying his request for an order to have defendants submit to a "lie

detector/voice stress analyzer").  The court also orders plaintiff to refrain from sending

inappropriate and ex parte messages via electronic mail to the court or its personnel.[2]  Should he

wish to communicate with the court, he shall do so by filing appropriate documents, and serving

---

[2]  Plaintiff has repeatedly sent electronic messages to the court, which are rife with
obscenities and which serve no purpose in the prosecution of this case.  If the practice continues
it will result in a recommendation that this action be dismissed for failure to comply with an
order of the court and the rules of practice before this court.

1   opposing counsel with a notice of such filings.  Failure to abide by this order shall result in

2   sanctions.

3   **II. DISCUSSION**

4        Defendants move for summary judgment on the basis of qualified immunity.  Qualified

5   immunity protects government officials from suits seeking civil damages.  It is not only an

6   immunity from liability, it is an immunity from the process itself.  "Qualified immunity is 'an

7   entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S.

8   194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

9        In *Saucier*, the Supreme Court outlined a two-step qualified immunity analysis.  First,

10   "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the

11   officer's conduct violated a constitutional right?"  *Id*., at 201.  If yes, the next step is to ask

12   whether the right was clearly established."  *Id*.  "The relevant, dispositive inquiry under this

13   second step is whether it would be clear to a reasonable officer that his conduct was unlawful in

14   the situation he confronted."  *KRL v. Estate of Moore*, 512 F.3d 1184, 1189 (9th Cir. 2008)

15   (citing  *Saucier*, 533 U.S. at 202) (internal quotation marks omitted).  Unless the law put the

16   official on notice that his conduct would be clearly unlawful, the official is entitled to qualified

17   immunity.  *Saucier*, 533 U.S. at 202.  This second prong of the analysis acknowledges "that

18   reasonable mistakes can be made as to the legal constraints on particular police conduct. . . ."

19   *Id.*, at 195.  Thus, even when "a constitutional violation occurs, law enforcement officers

20   nonetheless are entitled to qualified immunity if they act reasonably under the circumstances."

21   *KRL*, 512 F.3d at 1189 (citing *Wilson v. Layne*, 526 U.S. 603, 614 (1999)).  "This standard gives

22   ample room for mistaken judgments by protecting all but the plainly incompetent or those who

23   knowingly violate the law."  *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quotations and

24   citations omitted).

25        Generally, it is the moving defendant's burden to establish that he is entitled to qualified

26   immunity.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Moreno v. Baca*, 431 F.3d

633, 638 (9th Cir. 2005);  *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992).

A plaintiff "may overcome the defendant official's qualified immunity only by showing that

those rights were clearly established at the time of the conduct at issue." *Maraziti*, 953 F.2d at

523 (quoting *Davis v. Scherer*, 468 U.S. 183, 197 (1984)).  "If this burden is met by plaintiff, the

defendant then bears the burden of establishing that his actions were reasonable, even though

they might have violated the plaintiff's constitutional rights." *Id.* (citing *Benigni v. City of

Hemet*, 879 F.2d 473, 480 (9th Cir. 1988)).

Here, defendants assert that no constitutional violations occurred, and that even if they

did, they acted reasonably under the circumstances.

A. <u>Summary Judgment Standard</u>

Qualified immunity has been raised here in the context of a summary judgment motion.

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no

disputed material facts.  *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18

F.3d 1468, 1471 (9th Cir. 1994).  At issue is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Two

steps are necessary.  First, according to the substantive law, the court must determine what facts

are material.  Second, in light of the appropriate standard of proof, the court must determine

whether material factual disputes require resolution at trial.  *Id.*, at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the

moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v.

National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  The moving party need only point to matters

which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477

U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish

genuine material factual issues.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986).  The nonmoving party with the burden of proof  "must establish each element of his claim with significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994) (internal quotations omitted).  A complete failure of proof on an essential element of the nonmoving party's case renders all other facts immaterial, and entitles the moving party to summary judgment. *Celotex*, 477 U.S. at 322.

To withstand a motion for summary judgment, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party." *Anderson*, 477 U.S. at 250.  The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *See* Fed R. Civ. P. 56(e); *see Anderson*, 477 U.S. at 248.  Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 25.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  "If the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *See Matsushita*, 475 U.S. at 587.

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court should grant summary judgment.

////

B.  Defendants' Objections to Plaintiff's Evidence

In reply to plaintiff's opposition, defendants assert that the declarations submitted by plaintiff are not admissible evidence and therefore should not be considered by the court in deciding their motion.  Defendants, however, fail to explain why they believe the evidence is inadmissible.  The declarations are sworn to by plaintiff and, for the most part, recount the events of July 15, 2006, as he perceived them.  Although many of the statements made in the declaration merely repeat the defendants' statements and call them lies, some of plaintiff's statements contain specific factual averments regarding the events of the morning in question.  Such statements are likely to mirror plaintiff's testimony at trial, and defendants have not offered any basis for why such testimony will not be permitted under the Rules of Evidence.  As discussed below, many of the allegations in plaintiff's declaration are general and not particularly helpful.  But those infirmities go to the whether the evidence is sufficient to meet his respective burden on this motion and not the admissibility of the declaration itself.  Accordingly, the objection is overruled.

C.  Application

Defendants argue that their conduct on July 16, 2007, did not violate plaintiff's constitutional rights, because the force used to arrest plaintiff was reasonable under the circumstances.

"The Fourth Amendment requires police officers making an arrest to use only an amount of force that is objectively reasonable in light of the circumstances facing them."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir. 2007) (citing *Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985)).  To determine whether a specific use of force was reasonable," the court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing government interests at stake."  *Id.*, at 477 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Relevant factors include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.* (citations

omitted).  The reasonableness determination also makes "allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."  *Id.* (quoting *Graham*, 490 U.S. at 396-97).

As a preliminary matter, many of the statements made in plaintiff's declarations opposing the defendants' motion for summary judgment are conclusory assertions that defendants are lying and that plaintiff "disputes" their averments.  Such averments are generally insufficient to defeat a motion for summary judgment.  However, in addition to these conclusory statements, plaintiff offers some specific factual averments, which differ from the version of events presented by defendants.

Although plaintiff denies some of the circumstances surrounding the reasons for the initial traffic stop, he fails to offer evidence disputing Officer Kenney's averment that plaintiff was swerving.  Declaration of Sean Kenney in Support of Defendants' Motion for Summary Judgment ("Kenney Decl."), ¶ 4; "Denial to Defendant Sean Kenney Declaration And . . True Statements of Disputed Facts in Support of Plaintiff's Motion to Quash," Docket Entry no. 47-2, (Pl.'s First Decl."), ¶ 3a.  Further, plaintiff admits to getting out of his vehicle after Officer Kenney pulled him over, walking to the patrol car, and putting his driver's license on the hood of the patrol car. *See* Pl.'s First Decl., ¶¶ 5a, 6a, 7a.  While plaintiff's conduct – getting out of his car and approaching an officer sitting alone in his patrol car at 4:00 a.m. – could reasonably be considered threatening and potentially dangerous under the circumstances, the parties have significant factual disputes about what followed.

While Kenney swears that he told plaintiff approximately four times to get back in his vehicle, plaintiff declares that Kenney told him this only once.  *See* Kenney Decl., ¶ 9; Pl.'s First Decl., ¶ 8a.  Plaintiff declares that after being told (once) to return to his car, he attempted to comply with Kenney's order, but as he started walking back to his car, Kenney got out of his car and told plaintiff he was under arrest.  Pl.'s First Decl., ¶ 9a.

1      Kenney declares that plaintiff threw his wallet at him, whereupon Kenny told plaintiff to

2 turn around and place his hands behind his back.  Kenney Decl., ¶¶ 12-13.  Kenney declares that

3 plaintiff refused to do so, and that he grabbed plaintiff's right arm and tried to turn him around,

4 but that plaintiff resisted.  *Id.*, ¶¶ 13-15.  Kenney declares that he could smell "a moderate odor of

5 an alcoholic beverage" on plaintiff, and that he radioed for cover.  *Id.*, ¶¶ 16-17.

6      By contrast, plaintiff declares that he complied with Kenney's order to turn around and

7 put his hands behind his back, but that Kenney grabbed him, knocked his wallet to the ground,

8 and injured his wrists while attempting to handcuff.  *See* Pl.'s First Decl., ¶ 12a.  Plaintiff

9 avers that Kenney then told him to get down on the ground, and as he was complying, Kenney

10 kicked him "hard on the right side" of his back.  *Id.*  Plaintiff swears that Kenney then jumped on

11 top of him and started hitting him in the face, head and back.  *Id.*

12      This varies from Kenney's averments, which provide that after he handcuffed plaintiff and

13 tried to search him, plaintiff pushed against Kenney, wrapped his leg around him, and caused

14 them both to fall to the ground.  *See* Kenney Decl., ¶¶ 20-24.  Kenney declares that he finally got

15 plaintiff on his stomach, and instructed him to stop resisting, but that plaintiff refused to obey.

16 *Id.*, ¶ 24.  Kenney stated that he put his knee between plaintiff's shoulder blades and neck to

17 control the upper part of his body and applied a wrist lock in an effort to get plaintiff to stop

18 resisting.  *Id.*, ¶¶ 25-26.

19      The parties' averments with regard to Officer Tribble's involvement are similarly at odds.

20 Neither party disputes that Officer Tribble arrived on the scene when plaintiff was on the ground.

21 *See* Declaration of Kent Tribble in Support of Defendants' Motion for Summary Judgment

22 ("Tribble Decl."), ¶ 5; Kenney Decl., ¶ 27.  Both Kenney and Tribble declare that plaintiff was

23 continuing to resist and was kicking his feet.  Tribble Decl., ¶¶ 6-8; Kenney Decl., ¶ 27.  Tribble

24 declares that he delivered two swift jabs to plaintiff's ribs using his night stick when plaintiff

25 would not obey a command to stop resisting.  Tribble Decl., ¶ 8.  He declares that he then placed

26 plaintiff in a figure four leg lock and applied a RIPP restraint to his feet, then led plaintiff to the

1   patrol car.  *Id.*, ¶¶ 9-10.

2       Plaintiff generally disputes the truth of Tribble's declaration, and specifically avers that

3   when Tribble arrived on the scene, Kenney stopped hitting him and Tribble started banging

4   plaintiff's head against the concrete roadway.  *See* "Denial to Defendant Michael Kent Tribble

5   Declaration And . .  True Statements of Disputed Facts in Support of Plaintiff's Motion to

6   Quash," Docket Entry no. 47-3, (Pl.'s Second Decl."), ¶ 6a.  Plaintiff also declares that Tribble

7   and an unknown officer grabbed plaintiff by the arm, pulled in separate directions, picked

8   plaintiff up and dropped him back onto the roadway again and again.  *Id.*, ¶ 7a.  Plaintiff further

9   avers that Tribble never applied the restraint devices to his feet.  *Id.*, ¶ 8a.

10       Kenney declares that once plaintiff was restrained, he arrested plaintiff for resisting arrest

11  and suspected DUI.[3]  Kenney Decl., ¶ 29.  He further declares that because plaintiff complained

12  of injuries to his wrist and elbow, he took him to Kaiser Hospital.  *Id.*, ¶ 30.  Kenney avers that

13  plaintiff had a small laceration above his right eye, and that Kenney himself had a wrist injury and

14  abrasions from struggling with plaintiff.  *Id.*

15       Kenney avers that a blood sample was drawn from plaintiff at the hospital, and that he was

16  diagnosed with bruising and abrasions.  *Id.*, ¶¶ 31, 33.  Plaintiff alleges much greater injuries, but

17  does not provide any corroborating evidence supporting this allegation.

18       Plaintiff also offers no evidence with regard to the allegations against defendant Richard

19  Botello, whom he asserts choked him during the blood draw.  Defendants do not concede that

20  Botello did this, nor do they submit evidence in denial of this claim.  However, they argue that if

21

22       [3]  There is no allegation in the second amended complaint or in the documents underlying
    this motion that plaintiff was ever brought to trial for these charges, and if so, what the results of
23  the prosecution were.  Thus, the court is unable to determine whether plaintiff's claim is barred
    under *Heck v. Humphrey*, 512 U.S. 477 (1994).  An excessive force claim may be *Heck*-barred if
24  the § 1983 plaintiff was convicted by a jury of resisting arrest under Cal. Pen. Code § 148(a)(1).
    *Smith v. City of Hemet*, 394 F.3d 689, 699, n. 5 (9th Cir. 2005) (a "jury's verdict necessarily
25  determines the lawfulness of the officers' actions throughout the whole course of the defendant's
    conduct, and any action alleging the use of excessive force would '*necessarily* imply the
26  invalidity of his conviction.'") (quoting *Susag v. City of Lake Forest*, 94 Cal. App. 4th 1401,
    1410 (Cal. Ct. App. 2002)) (emphasis in original).

1  defendant Botello did indeed use a choke restraint, it was done in order to obtain a blood draw

2  from plaintiff, and that the force used in restraining plaintiff was reasonable in light of plaintiff's

3  prolonged resistance and combative behavior throughout his arrest and detention.

4        However, given the starkly different accounts of plaintiff's arrest, the court cannot decide

5  the issue of qualified immunity in defendants' favor on this summary judgment motion.

6  Specifically, there are genuine disputes as to material facts regarding whether or not plaintiff

7  resisted the officers' commands, in addition to the amount and type of force used if, in fact, he did

8  resist.  "Where such disputes exist, summary judgment is appropriate only if Defendants are

9  entitled to qualified immunity on the facts as alleged by the non-moving party."  *Blankenhorn*,

10  485 F.3d at 477 (citing *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991)).  Here, viewing

11  the disputed facts in favor of plaintiff, the court cannot conclude on the present motion for

12  summary judgment that defendants are entitled to qualified immunity.[4]  As recounted above,

13  plaintiff has averred that he did not resist arrest, and that he suffered injuries from force that was

14  disproportionate to that needed to effect his arrest.  Because there are significant factual disputes

15  about the circumstances surrounding plaintiff's arrest and detention, the court cannot say that the

16  force used by Botello was, as a matter of law, reasonable under the circumstances.  If a fact-finder

17  believes plaintiff's version of the events, it may reasonably conclude that excessive force was

18  used.  Moreover, although the court does nor purport to resolve the dispute over whose version is

19  true, if plaintiff's account is accepted the law was clearly established that such unprovoked

20  application of force is unreasonable.

21        Based on the foregoing, the court cannot say as a matter of law that no constitutional

22  violations occurred, or that the force used was reasonable under the circumstances.  Accordingly,

23  the court must recommend that defendants' motion for summary judgment be denied.

24  ////

25

26        [4]  Defendants still may be entitled to immunity depending on the evidence presented at
trial or a renewed motion for summary judgment.

1       D.  City of Vallejo's Bankruptcy Petition and Appropriateness of Stay

2           After defendants' summary judgment motion was taken under submission, defendants

3   filed a "Notice of Automatic Stay."  In that filing, defendants indicated that the City of Vallejo

4   had filed a bankruptcy petition under chapter 9 of the United States Bankruptcy Code, 11 U.S.C.

5   §§ 101, *et seq*., and that pursuant to 11 U.S.C. § 362, this case had been automatically stayed.

6           However, upon review of the notice, the undersigned ordered defendants to file

7   supplemental briefing regarding the applicability of § 362 to this action, in which the City of

8   Vallejo (the "debtor), is no longer a party.  Having considered defendants' briefing, the court

9   finds that the stay provisions of § 362 should apply to this action.

10          Section 362(a)(1) operates to stay all actions against a debtor who has filed a bankruptcy

11  petition.  *White v. City of Santee (In re White)*, 186 B.R. 700, 703 (B.A.P. 9th Cir. 1995).  These

12  automatic stay provisions of § 362(a)(1) generally apply only to actions against the debtor.  *In re*

13  *Family Health Servs*., 105 B.R. 937, 942 (Bankr. C.D. Cal. 1989).

14          However, § 362(a)(1) has been applied to stay actions against non-debtor third parties in

15  "unusual circumstances."  *In re Family Health Servs*., 105 B.R. at 942.  For example, courts have

16  found the stay applicable where the non-debtor third party is entitled to absolute indemnity from

17  the debtor such that the debtor is, in effect, the real party defendant.  *Id*. (citing *A.H. Robins Co.,*

18  *Inc. v. Piccinin*, 788 F.2d 994, 1001-02 (4th Cir. 1986)).  Further, § 362(a)(3) provides for an

19  automatic stay of any act, whether against the debtor or third parties, to obtain possession or to

20  exercise control over property of the debtor.  *Id.* (citing 11 U.S.C. § 362(a)(3)).  Property of the

21  estate is defined in § 541 as "all legal or equitable interests of the debtor in property as of the

22  commencement of the case." 11 U.S.C. § 541(a)(1).

23          Here, although the City of Vallejo is no longer a party to this action, this case is one that

24  would necessarily affect its property if a judgment is entered in plaintiff's favor, or even if the

25  case settles.  Pursuant to Cal. Gov't Code § 995, a public entity is required to defend its

26  employees in civil actions for acts or omissions occurring within the scope of their employment,

1    regardless of whether they are named in their individual or official capacities.  Further, if the

2    action results in a judgment adverse to the employee, or settles, the public entity is required to

3    indemnify the employee for the amount of the judgment or settlement.  *See* Cal. Gov't Code

4    §825(a).  Because the City of Vallejo is required to represent the remaining defendants

5    throughout the balance of this case and to satisfy any judgment or settlement, this case is, in

6    effect, one against the debtor, and constitutes an act to obtain possession over property in the

7    estate.  Accordingly, the court finds that § 362(a) applicable and recommends that the action be

8    stayed on that basis.[5]

9    **III.  CONCLUSION**

10        In accordance with the foregoing, IT IS ORDERED that plaintiff shall refrain from

11   sending any further, inappropriate e-mail messages to the court or its personnel.  Failure to

12   comply with this order, or with the Federal Rules of Civil Procedure and this court's local rules,

13   will result in sanctions.  Sanctions may include a recommendation of dismissal.

14        Further, IT IS RECOMMENDED that defendants' motion for summary judgment be

15   denied, and that this action be stayed pursuant to chapter 9 of the United States Bankruptcy Code,

16   11 U.S.C. § 362(a).

17        These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within ten (10)

19   days after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22   shall be served and filed within ten (10) days after service of the objections.  The parties are

23

24        [5] On July 21, 2008, plaintiff filed a document that  appears to be on a form from the
     Solano County Sheriff's Custody Division.  In this form, plaintiff requests "a legal stay of
     federal lawsuit."  *See* doc. no. 54.  He also appears to request that the document be sent to other
25   courts in which he has actions pending.  The latter request appears to be directed to the Solano
     County Sheriff's Department, and not this court.  The court construes this filing as a request for a
26   stay, which, as set forth above, is recommended.

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951

3  F.2d 1153, 1157 (9th Cir. 1991).

4  DATED:  August 12, 2008.

5

6                          EDMUND F. BRENNAN
                           UNITED STATES MAGISTRATE JUDGE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26